```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA    )
                            )
         v.                 )
                            )    Criminal No. 04-10336-NMG
SANTIAGO ARROYO             )
         Defendant          )
```

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William F. Bloomer, Assistant U.S. Attorney, submits its Sentencing Memorandum with respect to Santiago Arroyo ("Arroyo").

**INTRODUCTION**

The Statement of Offense Conduct is set forth in detail in the Probation Department's Pre-Sentence Report ("PSR"). The government will not repeat the extensive allegations here.

On September 28, 2006, ARROYO pleaded guilty before the Honorable Nathaniel M. Gorton to conspiracy to distribute or possess with intent to distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. (Count I of the Superseding Indictment). Arroyo also pleaded guilty to Count Two of the Superseding Indictment, charging him with distribution of heroin (and aiding and abetting same) on December 10, 2003, in Lowell, Massachusetts. A sentencing hearing has been scheduled for

January 10, 1007.[1]

**GOVERNMENT'S POSITION**

The parties agree that ARROYO is responsible for at least five, but less than 10 grams of heroin. His Base Level Offense therefore is 14. ARROYO made the December 10, 2003 delivery of 9.9 grams to the undercover agent who had ordered it from his codefendant, Reynaldo Rivera ("RIVERA"), at a price of $950. Based upon information from a CI, RIVERA fired ARROYO soon after this transaction. No further drug buys or seizures were made from ARROYO. He was later arrested in Florida in June of 2005 after a warrant had issued for his arrest in the present case.

According to the PSR, ARROYO is a Criminal History Category I and is therefore safety-valve eligible under §§ 5C1.2 and

---

[1] As this Court is aware, following a ten-day trial, a jury returned guilty verdicts against five of the eleven codefendants in this case -- Julio SANTIAGO, Juan NUNEZ, Carlos COLON, Jose RODRIGUEZ, and Carlos SANCHEZ -- with respect to Count One of the Superseding Indictment. The jury also found Julio SANTIAGO guilty of the firearms offenses set forth in Count Seven, namely, possession of firearms in furtherance of a drug trafficking crime, and possession of unregistered firearms, to wit: silencers, (Count Eight). The jury further found that the conspiracy as a whole was responsible for more than 1,000 grams of heroin. With the exception of Enrique AGOSTO, the remaining defendants -- Reynaldo RIVERA, Zuleima REYES, Edwin TORREZ, Jose TORRADO, and Luis SANCHEZ -- have all pleaded guilty before the Honorable Nathaniel M. Gorton to Counts One of the Superseding Indictment. AGOSTO was severed from his co-defendants for purposes of trial and the charges against him remain outstanding. Jose TORRADO is the only defendant to have been sentenced in this case. On June 2, 2006, TORRADO pleaded guilty before the Honorable Nathaniel M. Gorton to Count One of the Superseding Indictment. He was sentenced that same date to a minimum mandatory 60 months imprisonment and 4 years' supervised release.

2D1.1(b)(7), provided that he satisfies criterion 5.[2]  Because his Base Offense Level is lower than 16, a two-level adjustment for acceptance of responsibility is warranted under § 3E1.1(a).  If his Total Offense Level is 12, ARROYO has a GSR of 10 to 16 month's incarceration.  That calculation puts ARROYO squarely in Zone C of the Sentencing Guidelines.  Under § 5C1.1(d), a minimum term of imprisonment is satisfied under Zone C by (1) a sentence of imprisonment, or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment.

If he satisfies criterion 5 of § 5C1.2(a) prior to sentencing, ARROYO's offense level is reduced by an additional two points (to 10), which sets his GSR at 6 to 12 month's incarceration.  That calculation places ARROYO squarely in Zone B.  Under § 5C1.1(c), a minimum term of imprisonment is satisfied under Zone B by (1) a sentence of imprisonment, or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one month is satisfied by imprisonment, or (3) a sentence of probation that

---

[2]As of the date of this memorandum, ARROYO has not met this requirement of safety-valve eligibility.

includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).

If ARROYO satisfies criterion 5 of § 5C1.2(a) prior to sentencing, the government would recommend a term of imprisonment of 6 months; 3 year's supervised release; and a fine within the Guidelines Range, unless the court finds that ARROYO is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay a fine. Otherwise, the government recommends a term of incarceration of 10 months to be followed by 3 year's supervised release and a fine, if the Court deems appropriate, within the Guidelines Range. The defendant is responsible for a $200 special assessment.

**ROLE**

Arroyo was a significant participant in the transaction totaling 9.9 grams of heroin for which he is being held accountable and he should not receive either a minimal or minor role reduction under U.S.S.G. §3B1.2. Role adjustments are "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, n.3(C). To receive any reduction, Arroyo must show that he is "substantially less culpable than the average participant." U.S.S.G. §3B1.2, Application Note 3(A); *see United States v. Lopez-Gil*, 965 F.2d 1124, 1131 (1st Cir. 1992)("defendant has burden of proving entitlement to such a downward adjustment") *citing United*

*States v. Ocasio*, 914 F.2d 330, 332 (1st Cir. 1990).  Moreover, the Guidelines caution that the minimal participant adjustment is to be used "infrequently."

Arroyo must not only show that he is less culpable than most others involved in this particular offense, but that he is less culpable than defendants charged in similar cases.  *See United States v. Ortiz-Santiago*, 211 F.3d 146, 149 (1st Cir. 2000)("defendant has the burden of proving that he is both less culpable than most others involved in the offense of conviction and less culpable than most other miscreants convicted of comparable crimes.").  Recently, in *United States v. Cao*, No. 06-1224 (C.A. 1 (Me) December 15, 2006), the First Circuit affirmed the district court's decision at sentencing not to give the defendant a role reduction as a minor or minimal participant.  Even though the defendant was less culpable than the leaders of the conspiracy, "that is not enough: he was required to show that he was less culpable than the average participant, a judgment normally made not with statistics but by practical indicia like role, frequency, and duration."  Id. at 4.

Here, even assuming that defendant is less culpable than his codefendants in this conspiracy scheme, Arroyo simply was not a "minor" or "minimal" participant in the conduct for which he is being held accountable: the delivery of approximately 10 grams of heroin (commonly called a "finger") to an undercover officer on

5

behalf of Reynaldo Rivera. Indeed, if anything Arroyo substantially participated in the charged criminal conduct by delivering the heroin and accepting payment for the drug. It therefore cannot be said that Arroyo is "less culpable than the average participant" in a similar transaction. *See United States v. Cao, supra*. Probation concurs in this judgment. *See* PSR ¶ 135.

**CREDIT FOR PRETRIAL RELEASE**

Arroyo seems to argue without citation to any authority that he should receive some type of consideration under 18 U.S.C. §3553(a) for residing at the Coolidge House for seven months during pretrial release because he was unable to find living arrangements suitable to the court. This argument is without merit. First, the express language §3553(a) does not permit a court to consider the impositions on restrictions of living arrangements in fashioning an appropriate sentence. In fact, §3553(a)(5)(A) instructs the court to consider any pertinent policy statement "issued by the Sentencing Commission pursuant to section 994(a) of Title 28, United States Code . . .", which incorporates the Sentencing Guidelines. See U.S.S.G. §1A1.1. Turning to the Guidelines, §4A1.2(b) defines "imprisonment" as "a sentence of incarceration." Courts have interpreted "imprisonment" under the guidelines not to include time spent in types of confinement other than actual incarceration in a penal institution. See, *e.g.*, *United States v. Serafini*, 233 F.3d 758, (3rd Cir. 2000)(community confinement

cannot be substituted for imprisonment for fulfilling the requirement that a portion of the sentence be satisfied by imprisonment); *United States v. Elkins*, 176 F.3d 1016, 1019 (7th Cir. 1999)("Imprisonment," in the context of the guidelines denotes time actually served in a penal institution); *United States v. Jones*, 107 F.3d 1147, 1165 (6th Cir. 1998)(holding that time spent in home detention under the community alternatives to prison program cannot count as a "sentence of imprisonment" under §4A1.1(a)); *United States v. Phipps*, 68 F.3d 159, 162 (7th Cir. 1995)("'Home detention' differs from 'imprisonment' throughout the Guidelines' schema. It is not 'imprisonment' but is a 'substitute for imprisonment.'")(quoting U.S.S.G. §5B1.4(b)(20)). Cf. *Reno v. Koray*, 515 U.S. 50, 65 (1995)(holding that "the time respondent spent at the Volunteers of America community treatment center while 'released' on bail pursuant to the Bail Reform Act of 1984 was not 'official detention' within the meaning of 18 U.S.C. §3585").[3] It simply makes no sense legally or logically for Arroyo to receive some type of credit, whether under §3553(a) or otherwise, towards the calculation of his sentence simply because he was unable to disassociate himself with a third-party custodian who had criminal convictions. *See* Docket Entry 06/30/05.

---

[3] Similarly, §5C1.1 distinguishes between "imprisonment" and "substitute punishments," such as intermittent confinement, community confinement, and home detention. U.S.S.G. §5C1.1.

**§3553(a) FACTORS**

Although the Guidelines are advisory now under *Booker*, there is also no viable basis at this time for deviating from the guideline range under 18 U.S.C. §3553(a) in the circumstances of these cases.  Arroyo reports no significant physical impairments (PSR ¶176).  He reports good mental and emotional health (PSR ¶178) and does not feel the need for psychological assistance (PSR ¶181). Arroyo reports no history of substance abuse or substance abuse treatment (PSR ¶183), although he describes himself as a past "heavy smoker" of marijuana (PSR ¶184).  He is a High School graduate and is skilled in construction (PSR ¶¶ 187-188).

In short, the PSR reflects nothing unusual or extraordinary in Arroyo's background to justify taking him outside of the heartland of cases already addressed by the Sentencing Guidelines absent a motion by the government.  *C.f., Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 2047 (1996) ("[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline").  Arroyo chose to set sail on this course to deal heroin and nothing in the current should steer him outside the federal sentencing guideline range.  *See United States v. Thurston*, No. 05-2271 (1st Cir. July 26, 2006) (discussing Congressional goal of promoting national uniformity in

sentencing).

                          RESPECTFULLY SUBMITTED
                          MICHAEL J. SULLIVAN
                          United States Attorney

By:   */s/ William F. Bloomer*
       WILLIAM BLOOMER
       Assistant U.S. Attorney
       BBO#553104
       william.bloomer@usdoj.gov
       (617) 748-3644

**CERTIFICATE OF SERVICE**

    I, William F. Bloomer, hereby certify that this document filed through the ECF system on January 9, 2007, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                          */s/William F. Bloomer*
                          WILLIAM F. BLOOMER

Date: 9 January 2007